**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

KINON SURFACE DESIGN, INC.,

       Plaintiff,

                                      **Case No. 9:18-CV-81065**

v.

HYATT CORPORATION

       Defendant.

_____/

**DEFENDANT HYATT CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to L.R. 56.1 and Fed. R. Civ. P. 56, Defendant Hyatt Corporation files its Motion

for Summary Judgment and accompanying memorandum of law ("Motion").  As detailed here,

Plaintiff Kinon Surface Design, Inc.'s copyright-infringement claims fail as a matter of law on

several grounds, which do not involve a disputed genuine issue of material fact.[1]  Accordingly, a trial

is unnecessary, and this Court should enter a final judgment in Hyatt Corporation's favor.

**INTRODUCTION**

This action should be dismissed as a matter of law for any or all of the following reasons:

(1)      Under the copyright-invalidity defense, Plaintiff's Pattern 228 is a process or
patent, and lacks original authorship and protectable expression as an eligible
copyright;
§

---

[1] Pursuant to L.R. 56.1(a), Hyatt Corporation's Motion is supported by its Statement of Undisputed Material Facts ("SOF"), inclusive of Exhibits A-AC; the Declaration of Elizabeth Sofarelli, including Exs A-B filed contemporaneously; and the Affidavit of Daniel Cenatempo, including Exs A-B filed contemporaneously.  In addition, the Motion is supported by cited record evidence and pleadings already appearing on this Court's docket.  For a small number of exhibits, the documents are truly confidential, and thus, Hyatt Corporation will seek leave on Monday, May 20, 2019, to file those documents under seal pursuant to L.R. 5.4.

(2)     Under the statutory architectural-exemption doctrine, Hyatt Corporation's pictorial representation of the Grand Hyatt Dalian hotel room in certain accused images does not constitute infringement; and

(3)     No record evidence supports (a) infringement against Hyatt Corporation (either directly or indirectly); (b) jurisdiction over Hyatt Corporation; or (c) any willfulness by Hyatt Corporation or any damages proximately caused by Hyatt Corporation.

## STANDARD OF REVIEW

This Court is well-versed in the applicable Rule 56 summary-judgment standard, and thus, it is unnecessary to restate it here. *See, e.g.*, *Otomix Inc. v. Greene*, No. 17-cv-80704-MIDDLEBROOKS, 201§8 U.S. Dist. LEXIS 14440, at *3 (S.D. Fla. Jan. 24, 2018); *Schiappa v. CharityUSA.com, LLC*, No. 16-cv-81617-MIDDLEBROOKS/BRAN, 2017 U.S. Dist. LEXIS 75771, at *7-9 (S.D. Fla. May 17, 2017); *Herzog v. Castle Rock Entm't*, No. 97-505-CIV-MIDDLEBROOKS, 1998 U.S. Dist. LEXIS 22503, at *8 (S.D. Fla. Sept. 29, 1998).

## ANALYSIS

I.     **PLAINTIFF'S PATTERN 228 DESIGN IS NOT A VALID COPYRIGHT BECAUSE IT DOES NOT POSSESS AUTHORSHIP AND IS AN IMPROPER REGISTRATION OF A PATENTED PROCESS.**

As with many of Kinon's pattern applications that have been rejected by the U.S. Copyright Office, its Pattern 228 design is not an original work of authorship.  It is well-settled that a copyright registration is invalid for lack of copyrightable subject matter.  *See, e.g.*, *Bel Air Lighting, Inc. v. Progressive Lighting, Inc.,* 2010 U.S. Dist. LEXIS 23468, at *7-17 (N.D. Ga. 2010), *aff'd*, 549 F. App'x 913 (11th Cir. 2013) (granting/affirming summary judgment by accepting defendant's invalidity defense that "[plaintiff's] copyright is invalid because the designs of the light fixtures are not copyrightable and, even if they were, the designs lack sufficient original and creative authorship").  While Plaintiff may have obtained a copyright registration for Pattern 228, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected."

2

*Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1316 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co., Inc.*, 499 U.S. 340, 348 (1991)). "Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." *Feist Publ'ns*, 499 U.S. at 348.  It is fundamental in copyright law that "facts and discoveries, of course, are not themselves subject to copyright protection." *Id.* at 345.  Indeed, even invented facts, are not subject to copyright protection.  *See* 1 Nimmer on Copyright § 2.11 (2019) (noting that "[f]acts may be discovered, but they are not created by an act of authorship. One who discovers an otherwise unknown fact may well have performed a socially useful function, but the discovery as such does not render him an 'author' in either the constitutional or statutory sense."). "The discoverer merely finds and records. He may not claim that the facts are 'original' with him, although there may be originality and hence, authorship in the manner of reporting, *i.e.*, the 'expression,' of the facts. As copyright may only be conferred on 'authors,' it follows that, even apart from their status as 'ideas,' discoveries as facts per se may not be subject to copyright protection." 1 Nimmer on Copyright § 2.03[E] (2019).

Copyright protection for an original work of authorship does not extend to familiar symbols or designs; basic geometric shapes; or mere variations of typographic ornamentation, lettering or coloring.  *See* 37 C.F.R. § 202.1.  Copyright protection for an original work of authorship also does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  "Artistic skill, rather than physical or manufacturing skill, is required in order to satisfy the originality requirement." 1 Nimmer on Copyright § 2.01[A][1] (2019).

In *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1556 n.19 (11th Cir. 1996), the Eleventh Circuit expounded upon this well-settled principle, in the context of a computer program,

holding that if a process merges with the expression, there can be no copyright protection. *MiTek*

*Holdings* provided in pertinent part:

> MiTek seems to misapprehend the fundamental principle of copyright law that copyright does not protect an idea, but only the expression of the idea.
>
> * * *
>
> Were we to grant copyright protection to MiTek's user interface, which is nothing more than a process, we would be affording copyright protection to a process that is the province of patent law.  As the Federal Circuit stated, "Patent and copyright laws protect distinct aspects of a computer program."  *Atari Games Corp. v. Nintendo of America, Inc.*, 975 F.2d 832, 839 (Fed. Cir.1992). Patent law "provides protection for the process or method performed by a computer in accordance with a program," whereas copyright protects only "the expression of that process or method."  *Id*. If, however, the patentable process and its expression are indistinguishable or inextricably intertwined, then "the process merges with the expression and precludes copyright protection."  *Id*. at 839-40.

*Id*.  Even if a scintilla of originality existed, methods of operation, processes, and the like are not

protectable under copyright law. As the Court stated in *Bateman v. Mnemonics, Inc*., 79 F.3d 1532,

1541 n.21 (11th Cir. 1996), "[w]ere we to permit an author to claim copyright protection for those

elements of work that should be the province of patent law, we would be undermining the

competitive principles that are fundamental to the patent system."

Similarly, here, there is record evidence to support that Plaintiff is an inventor—not an

author—of the process of creating surface pattern designs.  Plaintiff's so-called copyright merges

with its patented process.  [SOF ¶¶3-4, 10, 13-14, 17].  Plaintiff's advertising or specification "sheet"

of Pattern 228 focuses on the idea or process as to how the décor material is made (and not the

expression itself):

> Various techniques are carefully used to create our different patterns.  Therefore like stone and wood, no two panels are ever the same.  Over a large panel it will have numerous shades and tones, and surface will have undulations as well as tiny pores.

[*Id.*]; *see also* [DE 1-1 at 2] (Kinon Specification Sheet) (all emphasis supplied unless otherwise

noted).

4

Tellingly, Plaintiff has admitted that it invented a process of pouring different materials to form a cured substrate. [SOF ¶¶ 3-4, 10, 13-14, 17]. In fact, it has a patent for "decorative materials" of surface designs, including the process thereof. [*Id.* at ¶¶5-8]. Plaintiff's patent specifically states, in the abstract, that the invention is a "visually decorative material having bulk decorative effects which may be used as a surface covering or for creating decorative objects". [*Id.*]. The look of the substrate is completely dictated by the process. [*Id.*].[2] Plaintiff's advertising/specification "sheet" of Pattern 228 focuses on the process or system regarding how the décor material is made—but techniques, processes, and ideas are the subject matter of patent protection—not necessarily copyright. Indeed, Plaintiff here is the holder of patents on the process to portray "'scientific reality [that] was not created by the plaintiffs'—it lies outside of copyright protection." 1 Nimmer 2.11[A] (citing *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 498 (7th Cir. 2011)).

To add further credibility, the U.S. Copyright Office has rejected numerous copyright applications made by Plaintiff Kinon for other similar patterns because of authorship concerns and the lack of separable aspects of the work, and because, after all, what Kinon has created is a patented process. [SOF ¶¶24-31]. In reviewing one of Plaintiff's patterns, the Copyright Office stated:

> Our general concerns are that perhaps adequate human authorship has not been fixed; the alleged designs that are shown in the deposit specimen you uploaded appear to have resulted from the random effects of manufacturing processes or machine processes, rather than from human design authorship. In addition, it appears that in each case no specific design is fixed; instead, it appears that what results is a general

---

[2] This is no different than, for example, someone who invents a new color. While colors are created by the combination of other colors in varying degrees to arrive at the new shade, the U.S. Copyright Office is clear that choices on such matters are not creative for copyright purposes. *See* Copyright U.S. Copyright Office, Compendium of U.S. Copyright Office Practices (Third) § 1006.1(A) ("When an author creates a document using a word processing program, the author may insert text, spaces, and paragraphs, choose the font and the size of the letters, and select the color of these elements, but those decisions do not constitute copyrightable authorship."); and § 906.3 ("Mere coloration or mere variations in coloring alone are not eligible for copyright protection…. This is the case even if the coloration makes a work more aesthetically pleasing or commercially valuable.").

<u>effect or directional tendency, not a fixed design</u> that may be replicated over and over.

[*Id.*]. Plaintiff's own patents reflect more of the same, describing its invention as a "visually decorative material having bulk decorative effects which may be used as a surface covering or for creating decorative objects …. The material is formed of a pigmented castable liquid vehicle …." [SOF ¶¶5-8]. Plaintiff's Pattern 228 design is a natural artifact of the mixture of the materials then poured and cured onto a suitable backing such as a substrate—it is not created by an act of authorship and does not result in a fixed expression. Record evidence demonstrates that Pattern 228 can be applied on different surfaces, and is most predominately used in subsequent third-party applications of walls, cabinetry, and furniture. [*Id.* at ¶¶15-16]. There is simply no way to extrapolate any expressiveness or originality to Plaintiff's Pattern 228. Accordingly, like many other Kinon patterns, especially since "no two panels are ever the same," Plaintiff's registration is invalid.

Plaintiff's work cannot be identified separately from, or exist independently of, the utilitarian aspects of the Chinese Hotel's walls. As the Copyright Office has indicated on numerous occasions, wall coverings are considered "useful articles" within the Copyright Act because of their functional properties. [SOF ¶¶24-31]; See 17 U.S.C. §101 ("A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."). Useful articles can be registered "only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id*.

This standard is known as the "separability test." The decision-maker must first "look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities," and then "must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." *Star Athletica, L.L.C. v. Varsity*

6

*Brands, Inc.*, 137 S. Ct. 1002, 1010, 1034 (2017) (explaining that Congress has rejected "every one of the approximately 70 design protection bills" for fashion design); *see also Bel Air Lighting*, 2010 U.S. Dist. LEXIS 23468, at *7-17 (copyright registration in lighting fixture held to be invalid for lack of copyrightable subject matter); *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, No. 2:11-cv-03838-ODW (FFM), 2017 U.S. Dist. LEXIS 201498, at *7 (C.D. Cal. May 8, 2017) (denying motion for reconsideration in light of *Star Athletica* and reasoning that "[w]hen an entity seeks protection for the arrangement of all the parts of an article, combined in the manner necessary to create the article, it is effectively seeking protection for the article as a whole. However, such wholesale protection is not allowed for useful articles.").

Here, Plaintiff admits that the Pattern 228 design is a part of the "wall" or is a "wall-covering."  [SOF ¶¶15-16].  The U.S. Copyright Office has found, on numerous occasions, that Plaintiff Kinon's designs reflect "wall-coverings" that are merely useful articles and result from a manufacturing process, not an original artistic work; and that its designs do not contain any separable features that are copyrightable.  [SOF ¶¶ 24-31].  Plaintiff's surface design patterns do not exist apart from the applications—its clients apply the designs directly to walls, cabinetry, furniture, and the like, and the design patterns are not, separable, removable, and transferrable to another medium apart from their existence as a wall-covering. [SOF ¶¶15-16].   In sum, because Plaintiff's Pattern 228 lacks authorship and conceptual separability, and is otherwise a process, Plaintiff's copyright registration is invalid.

## II.   THE WEBSITE PICTORIAL DISPLAY OF A HOTEL WALL DESIGN IS PERMISSIBLE PURSUANT TO COPYRIGHT LAW'S ARCHITECTURAL EXEMPTION UNDER 17 U.S.C. § 120(A).

Hyatt Corporation's pictorial representation or website displays of hotel rooms, inclusive of the accused images in this case, do not constitute infringement.  Many courts have dismissed cases

involving displays or reproduction of designs that are a part of a building or structure designed for

human occupancy.  The Copyright Act's architectural exemption states in pertinent part:

> Pictorial representation permitted.--The copyright in an architectural work that has
> been constructed does not include the right to prevent the making, distributing, or
> public display of pictures, paintings, photographs, or other pictorial representations
> of the work, if the building in which the work is embodied is located in or ordinarily
> visible from a public place.

17 U.S.C. § 120(a) (2019).  Courts have adopted and applied the architectural exemption doctrine to

pictorial representations, often on summary judgment. *See*, *e.g.*, *Morgan v. Hawthorne Homes, Inc.,*

Civ. No. 04-1809, 2009 U.S. Dist. LEXIS 31456, at *32-34 (W.D. Pa. Apr. 14, 2009) (granting

partial summary judgment on grounds that defendant "did not infringe on any copyright with respect

to the pictorial representation of the architectural work Bedford Lot 30 on its website"); *Landrau v.*

*Solis-Betancourt*, 554 F. Supp. 2d 102, 107, 113 (D.P.R. 2007) (in a case involving an article that

included seven interior photographs emphasizing the design of a house, the court granted summary

judgment for defendant, and dismissed plaintiffs' copyright-infringement claims under 17 U.S.C. §

120(a)); *Builders Mut. Ins. Co. v. Donald A. Gardner Architects, Inc.*, 856 F. Supp. 2d 773, 776-77

(D.S.C. 2012) (granting summary judgment for plaintiff in declaratory action and holding that it was

not obligated to cover an award of statutory damages in the underlying copyright-infringement

action because the architectural-exemption doctrine applied, which allowed the taking and

publishing, without the architect's consent, of photographs of a building located in or visible from a

public place on a website); *Sorenson v. Wolfson*, 96 F. Supp. 3d 347, 365-66 (S.D.N.Y. 2015) (sales

agent's website posting of potential purchaser's floorplan and roofplan for unfinished condominium

unit did not constitute copyright infringement; pictorial representation of unit on website was not

direct copy of plans for which purchaser received copyright registration, and when agent posted

sketch of plans on website); *Leicester v. Warner Bros.*, No. CV95-4058-HLH, 1998 U.S. Dist.

LEXIS 8366,   at *19-27 (C.D. Cal. May 29, 1998), *aff'd*, 232 F.3d 1212 (9th Cir. 2000) (granting/affirming judgment in defendant's favor, holding that the evidence demonstrated the four towers are a part of the architectural work and that, therefore, Section 120(a) applies, allowing the pictorial representations made by the defendant).

Section 120(a) of the Copyright Act is not limited to particular usages of a "photograph." *Builders Mut. Ins. Co.*, 856 F. Supp. 2d at 776 ("The court finds that the plain language of the statute does not limit its application to any particular individuals or usages of the photograph. Although [claimant] presents Congressional hearing testimony critical of the blanket exemption in § 120, Congress nonetheless passed § 120(a) as a blanket exception."). An architectural work "includes the overall form as well as the arrangement and composition of spaces and elements in the design[.]" *Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes*, Civ. No. 16-589, 2016 U.S. Dist. LEXIS 177016, at *8-9 (W.D. Pa. Dec. 22, 2016) (citing 17 U.S.C. § 101).  "The applicable regulation defines 'buildings' as 'humanly habitable structures that are intended to be both permanent and stationary, such as houses and office buildings, and other permanent and stationary structures <u>designed for human occupancy</u>, including but not limited to churches, museums, gazebos, and garden pavilions.'"  *Id*. (quoting 37 C.F.R. § 202.11(b)(2)).

In *Kitchen & Bath Concepts*, the plaintiff—a kitchen and bath design business—alleged that the defendant displayed unauthorized photographs of the interior of a home.  The plaintiff claimed it was the "owner of the copyright in the design of the interior of the [client's] home."  2016 U.S. Dist. LEXIS 177016, at *2.  In applying *Morgan*, *supra*, *Kitchen & Bath Concepts* noted that under "the plain language of 17 U.S.C. § 120, courts within other jurisdictions have concluded that pictorial representations of constructed work that is located within a building visible from a public place do <u>not</u> constitute copyright infringement."  *Id*. at *11-12.  *Kitchen & Bath Concepts* reasoned that "the

plain language of 17 U.S.C. § 120 includes 'photographs,' which are at issue here, as '[p]ictorial representations' that <u>are permitted</u>." *Id*. at *10 (quoting § 120(a)). Indeed, *Kitchen & Bath Concepts* found that a particular home at issue in the case was a "'building' under 17 U.S.C. § 120(a) because it is a 'humanly habitable structure[ ]  … such as [a] house[ ]'under 37 C.F.R. § 202.11(b)(2)." *Id*. at *9. Stated more broadly:

> 17 U.S.C. § 120 provides that it applies to "the building in which the work is <u>embodied</u>." *Id*. (emphasis added). The plain language of "embodied" <u>includes interior elements within the building</u>. Moreover, the definition of "architectural work" as "the overall form as well as the arrangement and composition of spaces and elements in the design" <u>plainly includes the interior spaces</u>—the master bathroom, the basement bathroom, the basement bar, the basement fireplace, the powder room, the laundry room, the bedroom closets, the kitchen, and the mudroom—at issue here. Indeed, courts applying the plain language of 17 U.S.C. § 120 have concluded that interior elements of a house constitute "architectural works."

*Kitchen & Bath Concepts*, 2016 U.S. Dist. LEXIS 177016, at *10-11 (internal citations omitted). On a rule 12(b)(6) motion, the Court found in favor of the defendant and plaintiff's copyright-infringement claim was dismissed. *Id*. at *4-14.

Here, Plaintiff contends that certain accused images displayed an allegedly infringing design of Plaintiff's Pattern 228 at the subject Chinese hotel. [SOF ¶¶43-54]. Neither party disputes that the allegedly infringing works are "wall coverings" or "wall designs" at the Chinese hotel.[3] Indeed, Plaintiff's own testimony admits that its surface designs are affixed to various applications by its clients, including walls, wall coverings, bathrooms, cabinetry, and other furniture in numerous public places. [SOF ¶¶ 15-16]. The plain view of the hyatt.com website pages readily identifies that the accused images are of interior spaces of the Chinese hotel, specifically of certain hotel bedrooms, and that there is a green and white design of a wall-covering in the background that allegedly infringes upon Plaintiff's work. Plaintiff testified that a knock-off infringing wall design included its

---

[3] A hotel room is indisputably a part of the interior of a building.

Pattern 228 design; that the design is affixed to the wall (short of attempting to remove it with a knife). A hotel room is necessarily inclusive of a humanly habitable structure. Further, the accused images allegedly include Plaintiff's Work, which again, is a part of the hotel walls. [SOF at ¶¶15-16].

As such, this Court should, as with many other cases involving photographs or pictorial representations of works, grant the pending Motion under the architectural-exemption doctrine of Section 120(a) of the Copyright Act. *See*, *e.g.*, *Kitchen & Bath Concepts*, 2016 U.S. Dist. LEXIS 177016, at *4-14.; *Leicester*, 232 F.3d at 1219; *Landrau*, 554 F. Supp. 2d at 113; *Builders Mut. Ins. Co.*, 856 F. Supp. 2d at 776-77; *Sorenson*, 96 F. Supp. 3d at 365-66.

### III. EVEN ASSUMING THAT PLAINTIFF CAN DEMONSTRATE A VALID COPYRIGHT, PLAINTIFF HAS FAILED TO SHOW THAT DEFENDANT COPIED ANY OF THE PROTECTED ELEMENTS OF THE WORK.

It is well-settled that a copyright owner has the burden to prove that the defendant has copied protected elements of the work. *Feist Publ'ns, Inc.*, 499 U.S. at 361. Copying must be proven by showing: (1) that the defendant had access to the allegedly infringed material; and (2) that the defendant's work is substantially similar to the plaintiff's copyrighted expression. *See*, *e.g.*, *John Alden Homes v. Kangas*, 142 F. Supp. 2d 1338, 1344-45 (M.D. Fla. 2001) (holding in favor of the defendant because the plaintiff failed to prove the second element of copying—substantial similarity). In copyright-infringement cases where the central issue is whether the original work is substantially similar to the allegedly infringing work, the Eleventh Circuit has determined that disposition at the summary-judgment stage is often appropriate. *See Intervest Const., Inc. v. Canterbury Estate Homes, Inc*., 554 F.3d 914, 920 (11th Cir. 2008) ("In fact, when the crucial question in a dispute involving compilations is substantial similarity at the level of protectable expression, it is often more reliably and accurately resolved in a summary judgment proceeding."). Where differences in two works are significant, no substantial similarity will be found. *Dream*

*Custom Homes, Inc. v. Modern Day Const., Inc.*, 476 F. App'x. 190, 192 (11th Cir. 2012) (affirming summary judgment: "The district court, however, appropriately performed the substantial similarity analysis by separating what was protectable expression from what was not protectable and by examining the similarities and dissimilarities with respect to the protectable elements."). The term "substantial similarity" has been defined as existing "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Beal v. Paramount Pictures Corp*., 20 F.3d 454, 459 n.4 (11th Cir. 1994) (internal citations omitted); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1567 (M.D. Fla.1995) ("An 'average lay observer' presumably is an individual who, without any vested interest in the governing issue, is sufficiently informed and alert to identify precisely the differences in the competing designs, yet sufficiently informed and independent to fairly identify and assess the similarities; that is, at a minimum, neither an engaged expert nor an oblivious passerby." (internal quotation omitted)); *John Alden Homes*, 142 F. Supp. 2d at 1344-45.   No matter how the copying is proven, "the plaintiff also must establish specifically that the allegedly infringing work is substantially <u>similar to the plaintiff's work with regard to its protected elements</u>." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000) (internal citations omitted).  The Court must consider the similarities between the designs as well as the dissimilarities. *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1992).

Here, and as expressed in greater detail above, Plaintiff has not readily identified what, if any, "protectable expression" is subject to its registration for Pattern 228; or what "protectable elements" are its copyrightable work.  Plaintiff admits that "like stone and wood no two panels are ever the same."  The Copyright Office has rejected several applications for other Kinon patterns based on these very words.  [SOF ¶¶24-31].  Record evidence reflects that Plaintiff's Pattern 228 was a specification sheet that was the deposited material of its registration.  It is in a white and green

color combination. [SOF ¶¶12-13]. When asked for advertising of Pattern 228, Plaintiff disclosed a 2011 catalog of various surface patterns, with alleged Pattern 228 in a white and brown color combination. Plaintiff admitted in deposition testimony that the alleged Pattern 228 design has been offered in at least three different color combinations. Plaintiff produced no printed publications of its Pattern 228 in the same or similar white and green color combination. Plaintiff disclosed in discovery a stylebook of various surface patterns, none of which identified Pattern 228. Plaintiff produced no online advertising or website pages reflecting its Pattern 228 design in the same or similar white and green color combination (as was deposited with the U.S. Copyright Office). Plaintiff admits that its Pattern 228 design is a part of its "historic library" and not in "high demand." [SOF ¶¶18-23]. Record evidence does not support exactly what, if any, "protectable expression" is Plaintiff's copyrightable work.

Further, Plaintiff cannot establish access to having copied Plaintiff's work or substantial similarity with respect to Hyatt Corporation's accused images. For the reasons articulated in greater detail in Defendant's SOF, and as explained in its Motion to Dismiss, [DEs 5 & 5-1], and as supported through discovery, Plaintiff cannot establish that Hyatt Corporation had direct access to the actual construction, creation, manufacturing, or installation of the allegedly infringing wall designs at the Chinese hotel. [SOF ¶44-46]. Record evidence does not show any written communications between the parties regarding Plaintiff's Pattern 228 design. With respect to the written communications and proposals Plaintiff alleges that it sent to Mr. Wei and China Resources—none reflect any "@hyatt.com" email address or any representative or agent authorized to act on behalf of Chicago-based Hyatt Corporation. No discovery reveals that Hyatt Corporation had any involvement with the photographer who took photos of the Chinese hotel. In fact, via Hyatt International Corporation, a separate entity, Defendant received a photography-release agreement for

13

said photos. The only remote, indirect involvement by Hyatt Corporation with respect alleged Pattern 228 is that it is the listed domain-name owner of hyatt.com, and that there were a few of the accused images displayed on the hyatt.com website. [SOF ¶¶43-54].

Moreover, both parties agree that there are non-copyrightable elements in the accused images. Plaintiff admitted in deposition testimony that it is not claiming any copyright protection regarding the bed, lamps, carpet, headboard, or any other features depicted in the accused images other than the "wall covering" or wall design. It is undisputed that both Plaintiff's copyrightable work (i.e., the specification sheet that was deposited with the U.S. Copyright Office) and the accused images of the wall-coverings include shades of green and white color combinations. But is unclear that the respective works at issue are the same or significantly similar overall, and no further evidence can be shown to demonstrate otherwise. Via deposition testimony and affidavit, Hyatt Corporation often retains photographers to take photos of particular Hyatt-branded hotels. Photographers are required to follow a certain set of guidelines as reflected in what is called the Photography Brand Standards, including taking photographs of certain views of a hotel. The photographers typically try to capture the exterior or outside of the hotel building itself, the hotel exterior front entrance, the hotel lobby, the guestrooms or suites, the bathrooms, the restaurants or bars, any meeting space (such as an auditorium or ballroom banquet), and any other featured amenities (such as the pool, spa, gym, fitness center, or golf course). As reflected on the pertinent website (including those pages produced by Hyatt Corporation in this case), there are various images or photos of the Chinese hotel, including an exterior photo of the hotel, the lobby of the hotel, the hotel dining area, the indoor heated pool, and the grand club. And while capturing the hotel rooms is a key feature, a photographer is not being hired to capture the back of a particular wall in a hotel

14

room.  With respect to the guestrooms, the goal is to give a traveler a glimpse of what the hotel guestroom may look like in a holistic manner.  [SOF ¶¶44-54].

In sum, the Court should grant Hyatt Corporation's Motion because Plaintiff has failed to satisfy its burden in proving copyright infringement.

## IV.     PLAINTIFF'S COPYRIGHT CLAIM UNDER CHINESE COPYRIGHT LAW HAS NOT BEEN ESTABLISHED.

There is no evidence creating a genuine issue of material fact as to any liability attributable to Hyatt Corporation that would support Plaintiff's Chinese copyright claim (Count II).  Plaintiff has failed to cite any legal authority regarding application of the facts to any particular violation under China's so-called copyright law.  In addition, Plaintiff missed the expert-disclosure deadline and has no foreign-law expert.  As such, this Count should be dismissed as a matter of law.

## V.      PLAINTIFF CANNOT DEMONSTRATE HYATT CORPORATION IS LIABLE FOR ANY INDIRECT INFRINGEMENT, OR THAT ANY WILLFULNESS HAS OCCURRED.

In *Cable Home Comm. Co. v. Network Prod., Inc*., 902 F. 2d 829, 845 (11th Cir. 1990), the Eleventh Circuit articulated the well-settled test for a contributory copyright infringer as "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another."  *Id*. at 845 (quoting *Gershwin Publ'ing Corp. v. Columbia Artists Mgmt., Inc.*., 443 F.2d 1159, 1162 (2d Cir. 1971)).  Under this test, more than a mere quantitative contribution to the primary infringement must be proven to establish liability.  *Gershwin*, 443 F.2d at 1162.  Contributory copyright infringement occurs only if the alleged contributory infringer knew or had reason to know of another party's direct infringement.  *Dawes-Ordonez v. Realtor Ass'n of Greater Fort Lauderdale, Inc*., 2010 U.S. Dist. LEXIS 44160, at *12 (S.D. Fla. May 5, 2010) (granting defendant's motion for summary judgment on plaintiff's claim for contributory copyright infringement because plaintiff failed to adduce any evidence that defendant knew about another

15

party's direct infringement).  "Although 'the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn,'" in general, contributory liability is based on the defendant's failure to stop its own actions which facilitate third-party infringement, while vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities.  *See Venus Fashions, Inc. v. ContextLogic, Inc*., 2017 U.S. Dist. LEXIS 155748, at *35 (M.D. Fla. Jan. 17, 2017).

Here, there is no evidence that Hyatt Corporation had knowledge of any independent third-party infringing activity.  "In the light of *Celotex*, ... nothing more is required than the filing of a summary judgment motion stating that the [plaintiff] had no evidence of infringement and pointing to the specific ways in which [plaintiff failed to establish its case]."  *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006) (citing *Celotex*, 477 U.S. at 324).  As previously articulated, the "Grand Hyatt Dalian" is owned by China Resources (Dalian) Co. Ltd. – an independent third party, which is located in China and operates separate and distinct from Hyatt Corporation.  [SOF ¶¶32-42].  Hyatt Corporation did not direct, supervise, control, or even participate with third-party entities associated with the Chinese hotel regarding the selection, procurement, and installation of the wall designs at issue there.  [*Id.*]  Hyatt Corporation did not distribute, sell, or offer for sale the alleged Kinon materials at issue at the Grand Hyatt Dalian.  [*Id.*].  Hyatt Corporation did not construct or build the alleged Kinon materials at issue in the Chinese hotel.  [*Id.*].  Hyatt Corporation did not receive any written estimates for use of the alleged Kinon materials at issue (specifically Pattern 228) from the Chinese hotel or Plaintiff.  Hyatt Corporation did not receive any shipments of the alleged Kinon materials at issue (specifically Pattern 228) from the Chinese hotel or Plaintiff.  Via Kinon's own deposition testimony, it admits that it did not produce any documents in this case reflecting any "@hyatt.com" e-mail regarding the 2011

16

proposals that Kinon allegedly sent to China Resources; or that it had other written communications with Hyatt Corporation regarding the 2011 proposals when the Chinese owners and operators were engaged in developing their hotel, including the wall designs therein.  As such, no record evidence demonstrates that Hyatt Corporation is liable for any indirect infringement.   [SOF ¶¶58-59].

For the same reasons, no record evidence supports any potential willfulness finding, and as such, the Court should rule as a matter of law for Hyatt Corporation.  As expressed above, Hyatt Corporation has no business relationship with China Resources or Hyatt International Hotel Management (Beijing) Co., Ltd.  Hyatt Corporation did not have any agreement with Hyatt International Hotel Management (Beijing) Co., Ltd. or China Resources (Dalian) Co. Ltd. regarding the Chinese hotel. Moreover, there are no employees of Hyatt Corporation that work at China Resources or at the Chinese hotel.  The corporate structure is such that each entity affiliated with Hyatt Corporation is separate and distinct.  China Resources is a wholly unrelated entity, and Hyatt Corporation had zero involvement with the installation, construction, and development of the wall designs at China Resources' Chinese hotel.  [*Id.* at ¶¶32-42].  Via its affiliate, Hyatt International Corporation, Hyatt Corporation obtained a photography-release agreement for the accused images displayed on the hyatt.com website; within a week of the Court denying Hyatt Corporation's Motion to Dismiss, and out of an abundance of caution without admission of liability, Hyatt Corporation removed the images from the hyatt.com website. [*Id.* at ¶¶44-47].

## VI.    RECORD EVIDENCE HAS NOT SHOWN THAT JURISDICTION OVER HYATT CORPORATION HAS BEEN ESTABLISHED.

The burden remains on Plaintiff to demonstrate that subject-matter jurisdiction exists (which the record shows Plaintiff has not done here). *See, e.g., Luftfahrtversicherungs-Aktiengesellschaft v. Markel Ins. Co.*, 2007 U.S. Dist. LEXIS 3021, at **8-10 (S.D. Fla. Jan. 16, 2007). As articulated in Hyatt Corporation's Motion to Dismiss, [DE 5 at 3], federal courts including the Eleventh Circuit,

have consistently denied subject-matter jurisdiction regarding extraterritorial acts of infringement occurring abroad. Indeed, "federal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States." *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004).  This extraterritorial principle applies to U.S.-based websites that may be accessible in varying countries and territories.  *Frida Kahlo Corp. v. Tupperware Corp.*, 2014 U.S. Dist. LEXIS 200931, at *14 (S.D. Fla. Mar. 31, 2014) (dismissing claims for copyright infringement on grounds that the court lacked subject-matter jurisdiction under the Copyright Act for alleged infringement that took place in Mexico even though defendants marketed allegedly infringing products on U.S-based social media websites and plaintiff had actually purchased and received a shipment of one of the products in Florida). Record evidence has not shown that anything has changed with regard to this Court's lack of subject-matter jurisdiction over Plaintiff's claims. As such, this Court lacks subject-matter jurisdiction over the alleged extraterritorial acts of copyright infringement at issue here (which, if committed anywhere, were necessarily committed in China by entities other than Hyatt Corporation). Further, record evidence supports that there is no personal jurisdiction over Hyatt Corporation regarding acts, which if committed at all, were necessarily committed by other entities in China – not Florida. The fact that Hyatt Corporation may have unrelated hotel business in Florida is inapposite to Plaintiff's mistaken assertions of general and specific jurisdiction.  *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014); *DCS Real Estate Invs., LLC v. Bella Collena Events, LLC*, 2015 U.S. Dist. LEXIS 17282, at *9 (M.D. Fla. Feb. 12, 2015) ("mere posting of an infringing trademark on a website 'without more' is insufficient to demonstrate that [the defendant] purposefully aimed its activity toward Florida"). [DE 5 at 16-18]

## VII.   PLAINTIFF CANNOT PROVE ACTUAL OR STATUTORY DAMAGES, EVEN IN THE UNLIKELY EVENT THAT ANY LIABILITY IS FOUND.

Generally, a copyright infringer can be liable for either actual damages, or for statutory damages, and the Court may award reasonable attorney's fees under 17 U.S.C. § 505. Nonetheless, there are limitations on these provisions depending on when a plaintiff filed for its copyright registration and when it filed its lawsuit. See 17 U.S.C. § 412. Because the accused images were made available and likely published no later than November 2014, [SOF ¶60], and Plaintiff's copyright registration did not take effect until January 2015, Plaintiff cannot seek any claim for statutory damages or attorneys' fees. *See e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493 (11th Cir. 1990) (holding that no statutory damages or attorneys' fees were available to plaintiff under the Copyright Act because the works were not registered with the U.S. Copyright Office at the time the alleged infringement occurred).

With respect to any actual damages, the usual measure of damages is injury to the market value of the infringed work. *See Kent v. Revere*, 1985 U.S. Dist. LEXIS 14507, at *22-23 (M.D. Fla. Oct. 28, 1985).  Market value is what a willing buyer would have been reasonably required to pay a willing seller for the plaintiff's protected work.  *Home Design Servs. v. A-Plus Homes, Inc.*, 2004 U.S. Dist. LEXIS 29044, at *11-16  (M.D. Fla. Dec. 20, 2004). Courts will typically allow a plaintiff to prove this through clear, non-speculative evidence of the profits that the plaintiff would have made had it not been for the infringement. *Kent*, 1985 U.S. Dist. LEXIS 14507, at *22-23. Here, Plaintiff's far-fetched request for $1.74 million (even if somehow provable) would be only attributable to China Resources.  No record evidence reflects that any of that revenue would have been attributable to Hyatt Corporation. With respect to the accused images, Plaintiff admits in discovery that it does not license any use of any photograph or image of its pattern designs.  Hyatt Corporation also received no booking fees or revenue from accused images via the hyatt.com

website with respect to the Chinese hotel.  [SOF ¶¶55-59]. This is explained in great detail in the

damages report of Daniel Cenatempo, filed contemporaneously with this motion.  As such, Plaintiff

should not be entitled to any actual damages as a matter of law.

Respectfully submitted,

**Lewis Brisbois Bisgaard & Smith LLP**          **Lewis Brisbois Bisgaard & Smith LLP**
JONATHAN D. GOINS (admitted *pro hac vice*)          TODD R. EHRENREICH
1180 Peachtree Street NE          DAVID L. LUCK
Suite 2900          2 Alhambra Plaza, Suite 1110
Atlanta, GA 30309          Coral Gables, Florida 33134
Telephone: 404.991.2160          Telephone: 786.353.0210
Facsimile:  404.467.8845          Facsimile:  786.513.2249

BY*: /s/ David L. Luck*
    TODD R. EHRENREICH
    FBN 945900
    todd.ehrenreich@lewisbrisbois.com
    JONATHAN D. GOINS
    GA. BAR NO. 738593
    jonathan.goins@lewisbrisbois.com
    DAVID L. LUCK
    FBN 014379
    david.luck@lewisbrisbois.com
    JENNA L. FISCHMAN
    FBN 099400
    jenna.fischman@lewisbrisbois.com

*COUNSEL FOR DEFENDANT HYATT CORPORATION*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on this 17th day of May, 2019, the foregoing was filed with the Court's CM/ECF Service.  I also certify that the foregoing document is being served this day on Joel B. Rothman, Esq., Schneider Rothman Intellectual Property Law Group, PLLC, 4651 North Federal Highway, Boca Raton, FL 33431, via transmission of Notices of Electronic filing generated by CM/ECF.

*/s/ David L. Luck*
DAVID L. LUCK
FBN 014379